SAIBER SCHLESINGER SATZ & GOLDSTEIN, LLC
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5311
(973) 622-3333
JF2248/MG0599
Attorneys for Declaratory Judgment
Defendants and Plaintiffs in Antoun

STEINER & KOSTYN, LLP
2 William Street, Suite 302
White Plains, New York  10601
(914) 328-4734
Of Counsel for Declaratory Judgment
Defendants and Plaintiffs in Antoun

| | |
|---|---|
| INGERSOLL-RAND COMPANY,<br><br>       Plaintiff,<br><br>v.<br><br>BILL BARNETT, ALAIN MAIRE, RAMESH PATEL, EUGENE SEROTINI, DAVID SHEMELD, ALAN THORPE, JOHN DOES (heretofore unidentified individuals) and JANE ROES (heretofore unidentified individuals),<br><br>       Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Hon. Dickinson R. Debevoise<br><br>Consolidated Civil Action<br>No. 05-1636 (DRD)<br><br><br>FIRST AMENDED COMPLAINT IN<br><u>ANTOUN ACTION AND JURY DEMAND</u> |
| SAMMY D. ANTOUN, BILL BARNETT, DALE W. BEEBEE, BARRY E. COTTRELL, ROBERT COUGHLIN, JAMES D. FOLEY, BRIAN GALLAGHER, JOHN A. GEGUS, DAVE IOCCO, ED KNOEPFLE, RAMESH PATEL, GARY F. PETERSON, DANTE E. RAMELLA, LAWRENCE RICHARDS, EDI BIOLCATI RINALDI, EUGENE SEROTINI, DAVID SHEMELD, JOHN D. SNYDER, ALAN THORPE, JOHN DOES 1-20, and RICHARD ROES 1-20,<br><br>       Plaintiffs, | |

v.

INGERSOLL-RAND COMPANY, a
New Jersey corporation,

          Defendant.

Plaintiffs Sammy D. Antoun, Bill Barnett, Dale W. Beebee, Barry E. Cottrell, Robert Coughlin, James D. Foley, Brain Gallagher, John A. Gegus, Dave Iocco, Ed Knoepfle, Ramesh Patel, Gary F. Peterson, Dante A. Ramella, Lawrence Richards, Edi Biolcati Rinaldi, Eugene Serotini, David Shemeld, John D. Snyder, Alan Thorpe, John Does 1-20, and Richard Roes 1-20 (hereinafter collectively "plaintiffs"), by way of First Amended Complaint against defendant Ingersoll-Rand Company ("IR"), alleges as follows:

**SUMMARY OF ACTION**

1.   This action arises out of IR's breach of its contractual obligations to plaintiffs who either retired from IR's former subsidiary, Dresser-Rand Company ("Dresser-Rand"), or remained employed with Dresser-Rand and refused to accept from IR a cash payment substantially less than the payment to which they were and are entitled under the Ingersoll-Rand Company Dresser-Rand Sale Incentive Plan (the "Plan").

2.   In 2000, IR implemented the Plan for the purpose of inducing certain key employees of Dresser-Rand to enhance their performance and to continue their employment with Dresser-Rand so that IR could maximize Dresser-Rand's value and sell it.

2

3.     Under the Plan, IR awarded plaintiffs, in the aggregate, 196,250 Sale Value Units ("SVUs").  The Plan provided that the value of these SVUs would be based upon the sales price of Dresser-Rand, and that the SVUs would be converted to cash and paid to plaintiffs within 90 days of the sale of Dresser-Rand. By its express terms, the Plan was "effective September 1, 2000 and will remain in effect until Dresser-Rand Company is sold."

4.   On August 25, 2004, IR entered into an agreement to sell Dresser-Rand for cash proceeds of approximately $1.2 billion.  On the very next day, IR sent a letter to the plaintiffs who were then still employed with Dresser-Rand and falsely represented to them that the Plan had expired at some prior unspecified time and that their SVUs had no value.

5.   At the same time it made that misrepresentation, IR offered these employees a different incentive plan under which these employees would receive a substantially smaller cash payment than IR had promised them under the Plan.  These plaintiffs, however, refused to accept this substantially smaller cash payment.  IR offered nothing at all to the remaining plaintiffs who held SVUs but had retired from Dresser-Rand before IR had announced its sale.

6.   On October 29, 2004, IR consummated its sale of Dresser-Rand for a price at which, under the formula contained in the Plan and based upon IR's own calculations, resulted in each SVU having a minimum value of $59.88.  As a result, the total

3

cash value of the 196,250 SVUs that IR awarded plaintiffs is at least $11,751,450.

 7. Since IR consummated the sale of Dresser-Rand, some of the plaintiffs have demanded payment from IR for the cash value of the SVUs issued to them.  Refusing to honor its contractual obligations, in February 2005, IR filed a declaratory judgment action in the Superior Court of New Jersey, Law Division, Bergen County, naming only five of the plaintiffs as defendants and seeking a judgment declaring that it has no liability to them under the Plan.  That action was removed to the United States District Court for the District of New Jersey and later consolidated with this action.

## JURISDICTION AND VENUE

 8. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1332(a)(2), because the matter in controversy for each of the plaintiffs exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of the State of New Jersey (defendant Ingersoll-Rand Company) and citizens of foreign states (each of the plaintiffs).

 9. Venue is proper under 28 U.S.C. §1391 because, among other reasons, IR resides in this District.

## PARTIES

 10. Plaintiff Sammy D. Antoun ("Antoun") is a citizen of the State of Texas, residing at 169 Grogans Point Road, The

Woodland, Texas.  Antoun is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 50,000 SVUs under the Plan. On July 15, 2003, Antoun retired from Dresser-Rand.

11.  Plaintiff Bill Barnett ("Barnett") is a citizen of the State of Texas, residing at 18319 Bluewater Cove Drive, Humble, Texas.  Barnett is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 7,500 SVUs under the Plan.  On January 6, 2002, Barnett retired from Dresser-Rand.

12.  Plaintiff Dale W. Beebee ("Beebee") is a citizen of the State of New York, residing at 1909 Riverview Road, Wellsville, New York.  Beebee is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 15,300 SVUs under the Plan.  On January 31, 2003, Beebee retired from Dresser-Rand.

13.  Plaintiff Barry E. Cottrell ("Cottrell") is a citizen of the State of Texas, residing at 11051 First Light, Montgomery, Texas.  Cottrell is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 50,000 SVUs under the Plan, which was later reduced to 21,450 SVUs.  Before October 29, 2004, Cottrell retired from Dresser-Rand.

14.  Plaintiff Robert Coughlin ("Coughlin") is a citizen of the State of Florida, residing at 1452 Arbor Trail, The Villages, Florida.  Coughlin is a former employee of Dresser-Rand who, on January 23, 2001, and June 29, 2001, was awarded 5,400 and 3,000 SVUs, respectively, under the Plan for a total of 8,400 SVUs.  On March 1, 2003, Coughlin retired from Dresser-

Rand.

15.   Plaintiff James D. Foley ("Foley") is a citizen of the State of New York, residing at 20 Sunnyside Avenue, Harrison, New York.  Foley is a current employee of Dresser-Rand who, on January 23, 2001, was awarded 3,600 SVUs under the Plan.

16.   Plaintiff Brian Gallagher ("Gallagher") is a citizen of the State of Texas, residing at 10 South Windsail, The Woodlands, Texas.  Gallagher is a former employee of Dresser-Rand who was awarded 37,000 SVUs under the Plan.  On December 6, 2004, Gallagher retired from Dresser-Rand.

17.   Plaintiff John A. Gegus ("Gegus") is a citizen of the State of Washington, residing at 7421 Pinnacle Place, Snoqalmie, Washington.  Gegus is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 4,500 SVUs under the Plan.  On November 1, 2004, Gegus retired from Dresser-Rand.

18.   Plaintiff Dave Iocco ("Iocco") is a citizen of the State of New York, residing at 2434 Morrcrest Drive, Corning, New York.  Iocco is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 3,000 SVUs under the Plan.  On July 18, 2003, Iocco retired from Dresser-Rand.

19.   Plaintiff Ed Knoepfle ("Knoepfle") is a citizen of the State of California, residing at 5335 Paseo Caliente, Yorba Linda, California.  Knoepfle is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 3,600 SVUs under the Plan. On July 31, 2004, Knoepfle retired from Dresser-

Rand.

20.   Plaintiff Ramesh Patel ("Patel") is a citizen of the State of Texas, residing at 5926 Stratford Gardens, Sugarland, Texas.  Patel is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 4,500 SVUs under the Plan. On March 31, 2003, Patel retired from Dresser-Rand.

21.   Plaintiff Gary F. Peterson ("Peterson") is a citizen of the State of California, residing at 333 Remington Loop, Danville, California.  Peterson is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 3,600 SVUs under the Plan.  On March 31, 2003, Peterson retired from Dresser-Rand.

22.   Plaintiff Dante A. Ramella ("Ramella") is a citizen of the State of California, residing at 25661 Nugget, Lake Forest, California.  Ramella is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 2,400 SVUs under the Plan.  On February 15, 2003, Ramella retired from Dresser-Rand.

23.   Plaintiff Lawrence Richards ("Richards") is a citizen of the State of New York, residing at 5754 Humphrey Road, Great Valley, New York.  Richards is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 3,600 SVUs under the Plan.  On April 30, 2003, Richards retired from Dresser-Rand.

24.   Plaintiff Edi Biolcati Rinaldi ("Rinaldi") is a

citizen of a foreign country, residing at 20158 Milano, Italy. Rinaldo is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 3,000 SVUs under the Plan.  On June 30, 2003, Rinaldi retired from Dresser-Rand.

25.  Plaintiff Eugene Serotini ("Serotini") is a citizen of the State of Illinois, residing at 286 Firth Street, Inverness, Illinois.  Serotini is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 5,700 SVUs under the Plan.  On May 31, 2003, Serotini retired from Dresser-Rand.

26.  Plaintiff David Shemeld ("Shemeld") is a citizen of the State of New York, residing at 219 West Shore Drive, Cuba, New York.  Shemeld is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 5,700 SVUs under the Plan.  On March 31, 2003, Shemeld retired from Dresser-Rand.

27.  Plaintiff John D. Snyder ("Snyder") is a citizen of the State of New York, residing at 675 Main Street, Olean, New York.  Snyder is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 11,000 SVUs under the Plan.  On April 1, 2004, Snyder retired from Dresser-Rand.

28.  Plaintiff Alan Thorpe ("Thorpe") is a citizen of a foreign country, residing at 3 Brookland Close, Manchester, England.  Thorpe is a former employee of Dresser-Rand who, on January 23, 2001, was awarded 2,400 SVUs under the Plan.  On October 31, 2002, Thorpe retired from Dresser-Rand.

29.  Plaintiff John Does 1-20 are fictitiously named

persons who received SVUs under the Plan and retired from Dresser-Rand before October 29, 2004.

30.   Plaintiff Richard Roes 1-20 are fictitiously named persons who received SVUs under the Plan, remained employed with Dresser-Rand on and after October 29, 2004, and did not accept the substantially smaller cash payment offered by IR in lieu of the payment to which they were entitled under the Plan.

31.   Defendant IR is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business at 155 Chestnut Ridge Road, Montvale, New Jersey.  Since December 31, 2001, IR has been a wholly owned subsidiary of Ingersoll-Rand Company Limited, a company organized under the laws of Bermuda.

## FACTUAL ALLEGATIONS

### The Business of IR and Its Divestment Strategy

32.   In or about 1987, IR and Dresser Industries, Inc. ("Dresser Inc.") entered into a joint venture to form Dresser-Rand.  Until on or about February 2, 1999, Dresser-Rand was owned 49% by IR and 51% by Dresser Inc.

33.   At all relevant times from 1999 through October 30, 2004, Dresser-Rand was a leading supplier of infrastructure equipment, including compressors, turbines and engines to the worldwide energy market, having approximately 4,500 employees at various locations in the United States and several foreign countries.

34.   In or around 1999, IR determined that its retention of Dresser-Rand was inconsistent with its business strategy and that it wished to sell its 49% interest in Dresser-Rand.   IR's decision was, in part, the result of its global strategy to engage in major divestitures designed to transform IR from a capital-intensive machinery manufacturer to a highly diversified company.

35.   Consistent with its strategy, in August 1999, IR announced its intention to sell its 49% interest in Dresser-Rand to Dresser Inc.   Exercising its right under the joint venture agreement to "put" Dresser-Rand to IR, Dresser Inc. elected not to purchase Dresser-Rand and to sell its 51% share to IR.   As a result, IR was obligated to purchase for $543 million Dresser Inc.'s 51% interest in Dresser-Rand.   The sale was completed on February 2, 2000, at which time Dresser-Rand became a wholly-owned subsidiary of IR.

36.   Because IR's purchase of Dresser Inc.'s 51% interest in Dresser-Rand was required under the terms of its joint venture agreement with Dresser Inc., was at a price that greatly exceeded the value of that interest, and was inconsistent with IR's decision to divest itself completely of Dresser-Rand, IR needed to develop a strategy to increase the value of Dresser-Rand so that it could sell it to realize the value of IR's prior 49% interest and recoup the $543 million paid to Dresser Inc.

**IR's Plan To Reward Key Employees of Dresser-Rand**

37.   As part of that strategy, IR developed the Plan. Through the Plan, IR intended to retain certain key employees of Dresser-Rand and reward them for their contributions, then and in the future, toward maximizing Dresser-Rand's earnings before interest, tax, depreciation and amortization ("EBITDA") to enable IR to achieve a desirable sales price for Dresser-Rand.  A copy of the Plan provided to plaintiffs is attached as Exhibit A.

38.   The reward to these key employees of Dresser-Rand was that IR would grant them SVUs "for the years 2001, 2002 and 2003," which would be converted to cash and paid by IR within 90 days of the sale of Dresser-Rand.  To demonstrate how the value of their continued employment with IR and contribution toward maximizing Dresser-Rand's earnings would inure to their direct benefit, IR provided plaintiffs with a chart that demonstrated how the value of the SVU increased exponentially with the sales price of Dresser-Rand.  A copy of the chart is attached as Exhibit B.

39.   Under the heading "Effective Date," the Plan states that it "is effective September 1, 2000 and will remain in effect until Dresser-Rand Company is sold."

40.   Under the heading "Performance Measurement," the Plan provides, in pertinent part, that "[t]he value of the Dresser-Rand Sale Incentive Plan is based on one component:  the net sale price of Dresser-Rand Company."  The Plan defines the

11

"net sale price of Dresser-Rand Company" to include the following:

- Gross Selling Price/Proceeds
- Less all transaction fees, such as:
  - Fees paid to investment bankers
  - Amounts paid to bankers or others to finance the sale
  - Other transaction fees
  - Less any liabilities associated with D-R that are assumed by Ingersoll-Rand Company

41.   Under the heading "Sale of Dresser-Rand Assets," the Plan provides that "[t]he sale of any major Dresser-Rand assets prior to the complete sale of the Company will be included in the overall net sale price.  This overall net sale price will be used to determine the value of an SVU."  Shortly after the effective date of the Plan, on September 5, 2000, IR sold the reciprocating gas compressor packaging and rental business of Dresser-Rand including its compressor packaging facility in Broken Arrow, Oklahoma to Hanover Compressor Company for $190 million.  Additionally, IR sold other major Dresser-Rand assets on or after September 1, 2000 which, pursuant to the Plan, were required to be included in the sales price of Dresser-Rand for the purpose of determining the value of an SVU, including, but not limited to, Dresser-Rand's DR-990 Aftermarket Business.

42.   By memorandum dated January 23, 2001, IR notified each of the plaintiffs that it had established the Plan for his

12

benefit, and advised each of them of the number of SVUs that IR had awarded to him under the Plan.  IR awarded, in the aggregate, 196,250 SVUs to plaintiffs.

43.  Although plaintiffs knew that IR was attempting to sell Dresser-Rand and that there was a substantial risk that the purchaser of Dresser-Rand might well terminate their employment, they did not immediately terminate their employment with Dresser-Rand.  Rather, induced by the cash payment that they would receive for their SVUs within 90 days of the sale of Dresser-Rand, they remained employed with Dresser-Rand for several years and substantially contributed toward maximizing Dresser-Rand's earnings, which increased the value of their SVUs.

**The Plan Achieves Its Desired Effect**
**Of Increasing the Value of Dresser-Rand**

44.  IR's efforts to induce plaintiffs, among others, to maximize Dresser-Rand's earnings were successful.  Dresser-Rand's revenues increased 6% in 2001 ($881.3 million), 16% in 2002 ($1.024 billion), and 30% in 2003 ($1.333 million).  During this same three period (2001-2003), Dresser-Rand's operating income and operating margins increased 102.8% and 37.5%, respectively.

45.  On August 25, 2004, IR entered into an Equity Purchase Agreement with First Reserve Corporation to sell Dresser-Rand for cash proceeds of approximately $1.2 billion.  In the Equity Purchase Agreement, IR expressly recognized that the Plan was in full force and effect.

46.   In particular, paragraph 6.1(c)(xv)(B) of the Equity Purchase Agreement, entitled "Conduct of Business by Dresser-Rand Group," IR agreed that it would not "other than in the ordinary course of business, in the case of new hires, as required by any agreement in effect as of the date hereof (including this Agreement) or as required by law . . . enter into, adopt or amend any employment agreement or employee benefit plan with or for the benefit of any Dresser-Rand Group Employee (other than pursuant to the Sale Incentive Program, and excluding any such actions that do not affect the Dresser-Rand Group Employee."  (Emphasis added).

47.   Moreover, in paragraph 6.8(p) of the Equity Purchase Agreement, entitled "Sale Incentive Program," IR specifically agreed to indemnify First Reserve Corporation for its liability to make payment to plaintiffs under the Plan. Paragraph 6.8(p) reads as follows:

> IR shall be responsible for and shall pay to Dresser-Rand Group Employees any amounts owed to Dresser-Rand Group Employees under the Sale Incentive Program in connection with the consummation of the transactions contemplated by this Agreement and IR shall indemnify and hold the Buyers harmless with respect to liability relating to or arising out of or in connection with any such amounts owed to Dresser-Rand Group Employees under the Sale Incentive Program.

A copy of the relevant pages of paragraphs 6.1(c)(xv)(B) and 6.8(p) of the Equity Purchase Agreement is attached collectively as Exhibit C.

48.   On October 29, 2004, IR and First Reserve

14

Corporation closed the sale of Dresser-Rand.

## The Corresponding Increase In Value of the SVUs

49.   According to IR's own records, the "net proceeds" from the October 29, 2004 sale of Dresser-Rand, as that phrase is defined in the Plan, totaled in excess of $975,506,698 (exclusive of the prior sale of other major Dresser-Rand assets), which equated to a value of $59.88 per SVU.

50.   The $976 million "net proceeds" from the sale of Dresser-Rand is consistent with what IR projected that it would receive from the sale of Dresser-Rand.  During a presentation made at the Prudential Equity conference in September 2004, IR stated that it "expect[s] approximately $900 Million in after tax proceeds" from that sale.

51.   IR's sale of Dresser-Rand's compressor packaging and rental business for $190 million in 2000 and, upon information and belief, its sale of other major Dresser-Rand assets were required under the Plan to be included in the overall net sale price to determine the value of an SVU.  These additional sales of Dresser-Rand's assets increased the value of a SVU to a figure well in excess of $59.88.

## IR's Attempt To Avoid Payment On the SVUs

52.   One day after it had executed the Equity Purchase Agreement, on August 26, 2004, IR announced publicly its agreement to sell Dresser-Rand.  In its announcement, IR stated that the sale of Dresser-Rand completed "the last of a series of

15

major divestitures in recent years as part of a strategy to transform the Company . . . ."

53.   On the same day, Herbert L. Henkel, the Chairman, President and Chief Executive Officer of IR, sent to the then current employees of Dresser-Rand a letter advising them that the Plan had terminated and the SVUs awarded under the Plan had expired at some unidentified time.  Mr. Henkel's August 26, 2004 letter was the first notice to any plaintiff that, according to IR, the Plan had "expired," which IR now claims occurred on December 31, 2002.

54.   Mr. Henkel's written representations completely contradicted the representations that IR, through Dresser-Rand, had made to plaintiffs and other employees of Dresser-Rand after December 31, 2002.  For example, in its written employment agreement dated March 7, 2003 governing Patel's retirement, Dresser-Rand agreed that Patel's retirement "does not impact in any way the provisions of that [P]lan" and that "while the program is in effect, you will have the same rights to any benefits under this [P]lan as any other employee who was granted SVU's who decides to retire."  Similarly, in its written employment agreement dated May 9, 2003 with Serotini, Dresser-Rand agreed that, because Serotini was retirement eligible, he would "have the same rights to any benefits under this [P]lan as any other employee who decides to retire who was granted Sales Value Units."

16

55.   Just one month before Mr. Henkel's statement, on July 22, 2004, Dresser-Rand again acknowledged that the Plan was in full force and effect.  In response to a question from a Dresser-Rand employee whether the SVUs are "still valid" and "[w]hat is the official word," David Stonebarger, then Director of Human Resources of Dresser-Rand, first responded "[o]ui" and then further clarified "[o]nly if we get sold.  HRD [Human Resources Director]."

56.   Even after Mr. Henkel's August 26, 2004 letter, IR acknowledged that the Plan was in full force and effect after December 31, 2002.  In a letter dated November 22, 2004 to Serotini, Robert C. Butler, Executive Director, Global Compensation & Benefits, stated that the SVUs "were awarded for the years 2001, 2002, and 2003."  (Emphasis added).  Mr. Butler's statement is consistent with the language of the Plan which provides that the grant of SVUs would be made "for the years 2001, 2002 and 2003."

57.   Simultaneous with Mr. Henkel's representation to the then current employees of Dresser-Rand that IR considered the Plan expired, IR notified them that it had established a new plan (hereinafter "Lesser Plan") to reward them in the event the sale of Dresser-Rand was completed before December 31, 2004.  The Lesser Plan, however, provided the then current plaintiffs with a substantially smaller cash payment than they were and are entitled to receive under the Plan.

17

58.   In his August 26, 2004 letter, Mr. Henkel asked the Dresser-Rand employees to "accept" the terms of the Lesser Plan.   Foley and Richard Roes 1-20, however, refused to accept the Lesser Plan.

59.   Before filing this action, some of the plaintiffs demanded payment from IR for the SVUs awarded to them under the Plan.   IR, however, failed and refused to make payment

**IR's Pre-Emptive Strike in State Court**

60.   Well aware that some or all of the plaintiffs were on the verge of filing suit against it, on or about February 10, 2005, IR filed a Complaint For Declaratory Judgment against five of the plaintiffs (Barnett, Patel, Serotini, Shemeld, and Thorpe), John Does whom IR identified as retirees of Dresser-Rand, and Jane Roes whom IR identified as active employees of Dresser-Rand.   The Complaint, filed in the Superior Court of New Jersey, Law Division, Bergen County, is captioned <u>Ingersoll-Rand Company v. Bill Barnett, et als</u>., Docket No. L-1075-05 (the "Declaratory Judgment Action").

61.   On or about March 4, 2005, IR filed an Amended Complaint for Declaratory Judgment in which it added another former employee of Dresser-Rand who received SVUs, Alaine Maire, as a defendant.   In its initial and Amended Complaints, IR seeks a judgment declaring that the Plan expired in 2002 and that the five named defendants possess no rights under the Plan.

18

62.  On March 24, 2005, the Declaratory Judgment Action was removed to this Court pursuant to a Notice of Removal. Thereafter, it was consolidated with this action.

## FIRST COUNT

### (Breach of Contract)

63.  They repeat and make a part hereof each of their allegations in paragraphs 1 through 62 of the First Amended Complaint as if fully set forth herein.

64.  Pursuant to the Plan, plaintiffs were entitled to be paid by IR for each of the SVUs that IR awarded to them within 90 days of the October 29, 2004 sale of Dresser-Rand, *i.e.*, January 27, 2005.

65.  Based upon a minimum $975,506,698 net sales price for Dresser-Rand, the value of each SVU is no less than $59.88. Accordingly, under the Plan, IR was, and is, obligated to pay plaintiffs (excluding John Does 1-20 and Richard Roes 1-20 whose number of SVUs is unknown) the amounts listed below using the minimum $59.88 value for each SVU:

| Name | SVUs | Payment Due from IR |
|------|------|---------------------|
| Antoun | 50,000 | $2,994,000.00 |
| Barnett | 7,500 | $ 449,100.00 |
| Beebee | 15,300 | $ 916,164.00 |
| Cottrell | 21,450 | $1,284,426.00 |
| Coughlin | 8,400 | $ 502,992.00 |
| Foley | 3,600 | $ 215,568.00 |

| | | |
|---|---|---|
| Gallagher | 37,000 | $2,215,560.00 |
| Gegus | 4,500 | $ 269,460.00 |
| Iocco | 3,000 | $ 179,640.00 |
| Knoepfle | 3,600 | $ 215,568.00 |
| Patel | 4,500 | $ 269,460.00 |
| Peterson | 3,600 | $ 215,568.00 |
| Ramella | 2,400 | $ 143,712.00 |
| Richards | 3,600 | $ 215,568.00 |
| Rinaldi | 3,000 | $ 179,640.00 |
| Serotini | 5,700 | $ 341,316.00 |
| Shemeld | 5,700 | $ 341,316.00 |
| Snyder | 11,000 | $ 658,680.00 |
| Thorpe | 2,400 | $ 143,712.00 |

66.    In breach of its contractual obligations under the Plan, IR failed to make any cash payment to plaintiffs.

67.    As a result of IR's breach of its contractual obligations under the Plan, plaintiffs have sustained damages.

WHEREFORE, plaintiffs Antoun, Barnett, Beebee, Cottrell, Coughlin, Foley, Gallagher, Gegus, Iocco, Knoepfle, Patel, Peterson, Ramella, Richards, Rinaldi, Serotini, Shemeld, Snyder, Thorpe, John Does 1-20, and Richard Roes 1-20 demand judgment in their favor and against defendant IR for compensatory damages, together with interest, costs of suit, and such other and further relief as the Court deems just and proper.

## SECOND COUNT

### (Breach of Covenant of Good Faith and Fair Dealing)

68.  They repeat and make a part hereof each of the allegations in paragraphs 1 through 67 of the First Amended Complaint as if fully set forth herein.

69.  By declaring that the Plan and the SVUs had expired, IR engaged in bad faith motivated by its desire to deprive the plaintiffs of the cash payments to which they were, and are, entitled under the Plan.

70.  By terminating the Plan and/or interpreting and deeming the Plan as expired at some undetermined time before August 2004 and failing to notify plaintiffs of its alleged termination, IR intended and had the effect of depriving plaintiffs from receiving benefits under the Plan and inducing them to remain in Dresser-Rand's employ, and unjustly enriching itself.

71.  IR's conduct breached the covenant of good faith and fair dealing.

72.  As a result of IR's breach of the covenant of good faith and fair dealing, plaintiffs have sustained damages.

WHEREFORE, plaintiffs Antoun, Barnett, Beebee, Cottrell, Coughlin, Foley, Gallagher, Gegus, Iocco, Knoepfle, Patel, Peterson, Ramella, Richards, Rinaldi, Serotini, Shemeld, Snyder, Thorpe, John Does 1-20, and Richard Roes 1-20 demand judgment in their favor and against defendant IR for compensatory

damages, together with interest, costs of suit, and such other and further relief as the Court deems just and proper.

### THIRD COUNT

### (Violation of Illinois Wage Payment and Collection Act)

73. They repeat and make a part hereof each of the allegations in paragraphs 1 through 72 of the First Amended Complaint as if fully set forth herein.

74. At the time IR established the Plan, Serotini and certain John Does and Richard Roes were employed by Dresser-Rand in Illinois (hereinafter collectively "Illinois employees"), and IR was an "employer" of the Illinois employees pursuant to the Illinois Wage Payment and Collection Act ("Illinois Wage Act"), 820 ILCS 115/2.

75. Pursuant to the Illinois Wage Act, the compensation due and owing to the Illinois employees for the SVUs issued to them under the Plan are "wages" within the meaning of the Illinois Wage Act, 820 ILCS 115/2.

76. In the fall of 2004, Serotini, through legal counsel, demanded that IR pay the compensation due and owing to him pursuant to the Plan. IR, however, failed and refused to make any payment to him under the Plan.

77. Pursuant to 705 ILCS 225/1, the Illinois employees are entitled to an award of reasonable attorneys' fees in the addition to the amount due and owing to them as wages.

WHEREFORE, plaintiff Illinois employees demand judgment in their favor and against defendant IR for compensatory damages, together with interest, reasonable attorneys' fees, costs of suit, and such other and further relief as the Court deems just and proper.

## FOURTH COUNT

### (Award of Attorneys' Fees Under Texas Statutory Law)

78.    They repeat and make a part hereof each of the allegations in paragraphs 1 through 77 of the First Amended Complaint as if fully set forth herein.

79.    At the time IR established the Plan for the benefit of certain employees of Dresser-Rand, Barnett, Cottrell, Patel, and certain John Does and Richard Roes were employed by Dresser-Rand in Texas (hereinafter collectively "Texas employees"), and IR was an "employer" of the Texas employees under Texas law.

80.    The amounts owed to the Texas employees constitute wages for services they each rendered.

81.    Section 38.001 of the Texas Civil Practice and Remedies Code, Tex.Civ.Prac. & Rem.Code §38.001(2) requires an award of reasonable attorneys' fees, in addition to compensatory damges and costs, associated with a successful claim for wages.

82.    Section 38.001 of the Texas Civil Practice and Remedies Code, Tex.Civ.Prac. & Rem.Code §38.001(2), requires an award of reasonable attorneys' fees, in addition to compensatory

damges and costs, associated with a successful claim for breach of contract.

83.  Based on their claims against IR for amounts due to them pursuant to the Plan, the Texas employees are entitled to an award of reasonable attorneys' fees in the event they prevail on their claims against IR.

WHEREFORE, plaintiff Texas employees demand judgment in their favor and against defendant IR for compensatory damages, together with interest, reasonable attorneys' fees, costs of suit, and such other and further relief as the Court deems just and proper.

### FIFTH COUNT

**(Award of Attorneys' Fees Under Washington Statutory Law)**

84.  They repeat and make a part hereof each of the allegations in paragraphs 1 through 83 of the First Amended Complaint as if fully set forth herein.

85.  At the time IR established the Plan for the benefit of certain employees of Dresser-Rand, Gegus and certain John Does and Richard Roes were employed by Dresser-Rand in Washington (hereinafter collectively "Washington employees"), and IR was an "employer" or "agent" of an "employer" of the Washington employees under Washington law.

86.  The amounts owed to the Washington employees constitute wages for services they each rendered.

24

87.   IR willfully and intentionally deprived the Washington employees of wages owed to each of them in violation of RCW 49.52.050.

88.   Based its violation of RCW 49.52.050, IR is liable to each of the Washington employees, pursuant to RCW 49.52.070, for twice the amount of wages owed to them as exemplary damages in addition to costs of this action and an award of reasonable attorneys' fees

89.   RCW 49.48.030 requires an award of reasonable attorneys' fees, in addition to compensatory damages and costs, associated with a successful claim for wages.

90.   Based on their claims against IR for amounts due to them pursuant to the Plan, the Washington employees are entitled to an award of reasonable attorneys' fees in the event they prevail on their claims against IR.

WHEREFORE, plaintiff Washington employees demand judgment in their favor and against defendant IR for compensatory damages, exemplary damages equal to the amount of compensatory damages awarded to each of them, together with interest, reasonable attorneys' fees, costs of suit, and such other and further relief as the Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby demand a trial by jury of any

issue triable of right by jury in this action.

SAIBER SCHLESINGER SATZ
& GOLDSTEIN, LLC
Attorneys for Declaratory Judgment
Defendants and Plaintiffs in Antoun

By: _____
        JAMES H. FORTE (JF2248)
        MICHAEL J. GERAGHTY (MG0599)
            Members of the Firm

STEINER & KOSTYN, LLP
2 William Street, Suite 302
White Plains, New York 10601
(914) 328-4734
Of Counsel to Declaratory Judgment
Defendants and Plaintiffs in Antoun

Dated:   November 2, 2005