NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

INGERSOLL-RAND COMPANY,
      Plaintiff,

  v.

BILL BARNETT, ALAIN MAIRE, RAMESH PATEL, EUGENE SEROTINI, DAVID SHEMELD, ALAN THORPE, JOHN DOES (heretofore unidentified individuals) and JANE ROES (heretofore unidentified individuals),
      Defendants,

SAMMY D. ANTOUN, BILL BARNETT, LARRY BETCHE, DALE W. BEEBEE, BARRY E. COTTRELL, ROBERT COUGHLIN, KEN FAHRBACH, JAMES D. FOLEY, BRIAN GALLAGHER, JOHN A. GEGUS, DAVE IOCCO, DAVID LAMOREAUX, ED KNOEPFLE, RAMESH PATEL, GARY F. PETERSON, DANTE E. RAMELLA, LAWRENCE RICHARDS, EDI BIOLCATI RINALDI, HANS RODBERG, MICHEL RABUTEAU, EUGENE SEROTINI, DAVID SHEMELD, JOHN SNYDER, ALAN THORPE, CHRISTOPHER J. TRIFFITT, JOHN DOES 1-20, and RICHARD ROES 1-20,
      Plaintiffs,

  v.

INGERSOLL-RAND COMPANY, a New Jersey Corporation,
      Defendant.

CONSOLIDATED
CIVIL ACTION NO. 05-1636 (DRD)

**OPINION**

Appearances

Anthony Bartell, Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4056

 *Attorney for Ingersoll-Rand Company, Declaratory Judgment Plaintiff*

Jerry P. Sattin, Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4056

 *Attorney for Ingersoll-Rand Company, Declaratory Judgment Plaintiff and Counter Defendant*

Carey Francis, Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4056

 *Attorney for Ingersoll-Rand Company, Antoun Defendants*

James H. Forte, Esq.
SAIBER SCHLESINGER SATZ & GOLDSTEIN, LLC
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5311

 *Attorney for Declaratory Judgment Defendants and Antoun Plaintiffs*

Scott Steiner, Esq.
Kevin Kostyn, Esq.
STEINER & KOSTYN, LLP
2 William Street, Suite 302
White Plains, New York 10601

 *Of Counsel for Declaratory Judgment Defendants and Antoun Plaintiffs*

**DEBEVOISE, United States Senior District Judge**

Plaintiff Ingersoll-Rand Company ("Ingersoll-Rand") moves to have the special master fees reallocated from the split originally determined by this Court to be "divided equally, with half of such amount to be borne by Plaintiff and the other half of such amount to be borne by Defendants" . . . and that "reasonable expenses incurred by the Special Master . . . shall also be divided equally between the parties."  Ingersoll-Rand bases its motion on the provision in the Order wherein "[t]he parties reserve the right to seek modification of the payment allocation . . . for good cause."[1]

For the reasons set forth below, Ingersoll-Rand's motion will be denied without prejudice.

## BACKGROUND

In discovery, Ingersoll-Rand, for themselves and on behalf of Dresser-Rand Company ("Dresser-Rand"), asserted privilege over numerous documents, providing four logs, totaling 124 pages, which explain why the documents[2] were withheld or redacted.  Ingersoll-Rand asserts that it provided Antoun plaintiffs with as much detail as was available regarding each document on the privilege logs: the document bates number; the document date; the document type; the document author; the direct recipient(s); the recipients of copies; the subject of the document; and, the basis for the privilege asserted.

Antoun plaintiffs state that they objected to approximately half, or 447, of the nearly 1,078

---

[1] It is noted that by separate Order of the Court dated January 4, 2007 Ingersoll-Rand's "application for an order shifting the costs of resolving earlier disputes over the production of documents that [Ingersoll-Rand] asserted were immune from discovery under various privileges is denied without prejudice to [Ingersoll-Rand] refiling its application before the Honorable Dickinson R. Debevoise."

[2] Ingersoll-Rand contends that the logs claimed privilege for 1,078 documents and that Antoun plaintiffs' objected to about 447 of them (about 42%).  These figures are substantially the same as those reported by Antoun plaintiffs.

documents for which Ingersoll-Rand claimed privilege by setting forth specific grounds for their objections. Antoun plaintiffs contend that, because neither Ingersoll-Rand, nor Dresser-Rand, responded, they requested intervention of the Court to resolve the dispute, suggesting that the Court appoint a Special Master to review the documents in question.

Ingersoll-Rand, in a letter to the Magistrate Judge dated February 21, 2006, agreed, in part, with Antoun plaintiffs' "suggestion that the Magistrate Judge or a special master review *in camera* certain privileged documents" but asked to have the scope broadened to encompass "all documents withheld by [Antoun plaintiffs] over which Ingersoll-Rand harbors reservations. This review however, need include only those withheld documents to which either side registers an objection."

In response, and "to ensure effective pre-trial supervision and management of this case and facilitate prompt resolution of pre-trial disputes," by Order dated April 11, 2006, the Court appointed the Honorable Herman Michels as Special Master for discovery matters.[3] Special Master Michels was granted the authority equivalent to that of a Magistrate Judge. Special Master Michels was also designated as mediator of any issue which the parties voluntarily agreed to mediate.

The Order also specified that Special Master Michel's fee "shall be divided equally between the parties, with half of such amount to be borne by Plaintiff and the other half of such amount to be borne by Defendants," including reasonable expenses incurred which "also shall be divided equally between the parties." The Order permitted the parties to "reserve the right to seek modification of the payment allocation . . . for good cause."

**Ingersoll-Rand's Argument**

---

[3] Excluding discovery issues, however, all motions were to be filed with the Court.

Ingersoll-Rand contends that Antoun plaintiffs convinced the Court to allocate the Special Master's fees equally, pending the Special Master's "determination as to the propriety of the assertion of privilege concerning these documents," and now argues that the costs should be reallocated on that basis. Because the Special Master ordered Ingersoll-Rand to produce only 86 of 447 documents challenged, or 19 percent, Ingersoll-Rand asserts that Antoun plaintiffs should bear 81 percent and Ingersoll-Rand should bear 19 percent of the Special Master's fees.

Further, Ingersoll-Rand argues that Antoun plaintiffs "resorted prematurely to the Court without first making a good faith effort to resolve amicably their objections" and that their objections challenged accepted privilege law. Because of this, Ingersoll-Rand contends that the unreasonable behavior of Antoun plaintiffs required the appointment of the Special Master, and therefore, Antoun plaintiffs "may properly be charged all or a major portion of the master's fees." See Committee Notes to Fed. R. Civ. P. 53(h)(3); also see, *e.g.* Commonwealth of Penn. v. Local Union 542, Int'l Union of Operating Engineers, 507 F. Supp. 1146, 1163 (E.D. Pa. 1980), *aff'd* without opinion, 648 F.2d 923 (3d Cir. 1981), *rev'd o.g.*, 458 U.S. 375 (1982).

To defend the content of its privilege logs, Ingersoll-Rand relies on Fed. R. Civ. P. 26(b)(5)[4] and the 1993 advisory committee notes which suggest that voluminous documents "can be described by categories." Additionally, Ingersoll-Rand asserts that it responded in a timely manner to Antoun plaintiffs' concerns and the requests of Special Master Michels for further information.

---

[4]Rule 26(b)(5) states, in part, that "the party shall make the [privilege] claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the applicability of the privilege or protection."

**Antoun Plaintiffs' Argument**

Antoun plaintiffs oppose the motion, arguing that Ingersoll-Rand does not have good cause to request reallocation because, after Ingersoll-Rand repeatedly failed to satisfy Antoun plaintiffs' discovery requests, including the production of the privilege logs, Ingersoll-Rand agreed to the appointment of the Special Master and did not object to the fee allocation made by the Court at the time the Order issued.

Antoun plaintiffs contend that the lack of response from Ingersoll-Rand and Dresser-Rand required them to seek the assistance of the Court to obtain the information needed. Further, they contend that the fact that Special Master Michels reviewed the privilege logs and requested further information on many of the entries is validation of Antoun plaintiffs' complaint about Ingersoll-Rand and its claims of privilege. Further validation, according to Antoun plaintiffs, is that Special Master Michels required Ingersoll-Rand to produce almost 90 of 447 documents questioned.

Antoun plaintiffs assert that, because the allocation of a special master's fees is within the discretion of the court, the court may allocate the fees evenly between the parties, may allocate the fees unevenly, or may charge the non-prevailing party the fees at the conclusion of the case. See, e.g., Atl. Richfield v. Am. Air., Inc., 98 F.3d 564, 571-2 (fees divided evenly); Chesa Int'l, Ltd. v. Fashion Assoc., Inc., 425 F. Supp. 234, 238 (S.D.N.Y. 1977) (defendants who obstructed discovery and violated order to produce information were required to pay the special master's fees); K-2 Ski Co., v. Head Ski Co., 506 F.2d 471, 47607 (9th Cir. 1974).

According to Antoun plaintiffs, even though Ingersoll-Rand has not shown that Antoun plaintiffs' challenges to the privilege logs were made in bad faith or frivolously, the appropriate time for modification of the Special Master's fees would be at the conclusion of the case.

## ANALYSIS

Local Civil Rule 34.1 governs requests for production of documents in this District:

> Where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked. When any privilege is claimed, the party asserting it shall indicate, as to the information requested, whether any such documents exist.[5]

The application of the rule is as set forth in Canadian Imperial Bank of Commerce v. Boardwalk Regency Corp., No. 84-1606 (D.N.J. letter op. and order filed Sept. 13, 1985)(Simandle) *aff'd* 108 F.R.D. 737 (D.N.J. 1986). Where attorney-client privilege was asserted, then Magistrate Judge Simandle required the party asserting the privilege to specify (a) the identity of the preparers, (b) the recipients, (c) dates, (d) subject matter, (e) whether direct quotes or paraphrases of advice from counsel were identified, and (f) whether such quotes or paraphrases could be redacted, leaving non-privileged information. Where work product was claimed, Magistrate Judge Simandle ordered certification as to (a) the identity of the authors, (b) the recipients, (c) dates, (d) the purpose of the report, and (e) the dates and purposes of the relationship between the authors and plaintiff's counsel with sufficient particularity to sustain plaintiff's burden to show the applicability of the doctrine.[6]

This rule was further developed in Torres v. Kuzniasz, 936 F. Supp. 1201, 1208-9 (D.N.J. 1996), which held that

> [a] proper privilege log must include, for each withheld document, the date of the document, the name of its author, the name of its recipient, the names of all people

---

[5] See LITE, N.J. FEDERAL PRACTICE RULES (2007 GANN) at 141.

[6] Id. at 142.

given copies of the document, the subject of the document, and the privilege or privileges asserted.[7]

A cursory review of the privilege logs submitted by Ingersoll-Rand reveals that there are numerous entries which lack the information determined to be needed in Torres. The Court does not find that Antoun plaintiffs' challenge of less than half of the documents was unreasonable or lacking in good faith, especially where the Special Master requested an *in camera* inspection, and more detailed information, on a number of these. "The Court must determine, document by document, whether the assertion of privilege is justified." See Times of Trenton Pub. Corp. v. Public Utility Service Corp., 2005 WL 1038956, *6 (D.N.J. May 3, 2005).

The Court finds that an even division of the fees of the Special Master was, and is, appropriate. The Court employed the Special Master at the suggestion of the Antoun plaintiffs and with the concurrence of Ingersoll-Rand. Additionally, Ingersoll-Rand asked to have the scope of the review of the Special Master broadened to encompass "all documents withheld by [Antoun plaintiffs] over which Ingersoll-Rand harbors reservations."

Acting upon the parties' agreement, and the further request of Ingersoll-Rand, this Court, not the magistrate judge, approved the appointment of the Special Master and established the division of the fees in accordance with Fed. R. Civ. P. 53(h)(3), by "allocat[ing] payment . . . among the parties after considering the nature and amount of the controversy, the means of the parties, and the extent to which any party is more responsible than other parties for the reference to a master."

Here, one party voluntarily suggested appointment of the Special Master, and the other party voluntarily concurred and additionally suggested an expansion of the charge of the Special Master.

---

[7] Id.

Considering the factors and these facts, the Court determined that an even split between the parties was the proper allocation. The Order reflected this split.

The Court is not persuaded now that it was the unreasonable behavior of one party, more than that of the other party, that precipitated the appointment of the Special Master. Although, according to Rule 53(h)(3), "[a]n interim allocation may be amended to reflect a decision on the merits," the Court declines to do so at this time.

## **CONCLUSION**

For the foregoing reasons, the Court, in applying the factors enunciated in Fed. R. Civ. P. 53(h)(3), determines that it is appropriate for the fees of Special Master Michels to be "divided equally, with half of such amount to be borne by Plaintiff and the other half of such amount to be borne by Defendants. . . ." and that "reasonable expenses incurred by the Special Master . . . shall also be divided equally between the parties." Ingersoll-Rand's motion will be denied without prejudice.

/s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.

Dated: January 23, 2007