NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INGERSOLL-RAND COMPANY,  Plaintiff,  v.  BILL BARNETT, ALAIN MAIRE, RAMESH PATEL, EUGENE SEROTINI, DAVID SHEMELD, ALAN THORPE, JOHN DOES (heretofore unidentified individuals) and JANE ROES (heretofore unidentified individuals),  Defendants, | CONSOLIDATED CIVIL ACTION NO. 05-1636 (DRD)  **OPINION** |
| SAMMY D. ANTOUN, BILL BARNETT, LARRY BETCHE, DALE W. BEEBEE, BARRY E. COTTRELL, ROBERT COUGHLIN, KEN FAHRBACH, JAMES D. FOLEY, BRIAN GALLAGHER, JOHN A. GEGUS, DAVE IOCCO, DAVID LAMOREAUX, ED KNOEPFLE, RAMESH PATEL, GARY F. PETERSON, DANTE E. RAMELLA, LAWRENCE RICHARDS, EDI BIOLCATI RINALDI, HANS RODBERG, MICHEL RABUTEAU, EUGENE SEROTINI, DAVID SHEMELD, JOHN SNYDER, ALAN THORPE, CHRISTOPHER J. TRIFFITT, JOHN DOES 1-20, and RICHARD ROES 1-20,  Plaintiffs,  v.  INGERSOLL-RAND COMPANY, a New Jersey Corporation,  Defendant. | |

Appearances by:

Anthony Bartell, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4056

*Attorney for Ingersoll-Rand Company, Declaratory Judgment Plaintiff*

Jerry P. Sattin, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4056

*Attorney for Ingersoll-Rand Company, Declaratory Judgment Plaintiff and Counter Defendant*

Carey Francis, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4056

*Attorney for Ingersoll-Rand Company, Antoun Defendants*

James H. Forte, Esq.
Saiber, Schlesinger Satz & Goldstein, LLC
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5311

*Attorney for Declaratory Judgment Defendants and Antoun Plaintiffs*

Scott Steiner, Esq.
Kevin Kostyn, Esq.
Steiner & Kostyn, LLP
2 William Street, Suite 302
White Plains, New York 10601

*Of Counsel for Declaratory Judgment Defendants and Antoun Plaintiffs*

**Debevoise, United States Senior District Judge**

Plaintiffs in the Antoun action, who are also the defendants in the Ingersoll-Rand declaratory judgment action, (the "Antoun plaintiffs"), move for partial summary judgment against Dresser-Rand Company as to liability on the first count of the second amended complaint for breach of contract because Ingersoll Rand failed to pay the Antoun plaintiffs the cash value of their Sales Value Units ("SVUs") under the Sales Incentive Program ("SIP") following the sale of Dresser Rand Company in 2004. Additionally, they move for summary judgment dismissing the Ingersoll-Rand declaratory judgment action. Lastly, the Antoun plaintiffs move to strike the remaining separate defenses (the first, fourth, fifth, sixth, seventh, and eighth) in Ingersoll-Rand's answer to the Antoun plaintiffs' second amended complaint in the Antoun action.

Its first separate defense is that the Antoun "[p]laintiffs fail to assert a cause of action against Ingersoll-Rand."

Its fourth separate defense is that the Antoun "[p]laintiffs' claims are barred by virtue of the expiration of the SIP prior to the 2004 sale of Dresser-Rand." This defense corresponds to the first count of the declaratory judgment action, which asserts that the SVUs and the SIP expired on December 31, 2002 when Ingersoll-Rand failed to sell Dresser-Rand.

Its fifth separate defense is that Ingersoll Rand's failure to sell Dresser-Rand on or before December 31, 2002 constituted the failure of a condition precedent to the payment of the SVUs to the Antoun plaintiffs. This defense corresponds to the second count of its declaratory judgment action, which alleges that the sale of Dresser-Rand "prior to December 31, 2002, constituted a condition precedent to payment under the SIP" and that because it "did not sell Dresser-Rand prior to December 31, 2002 [it] need make no payment under the SIP."

Its sixth separate defense is that Ingersoll Rand's failure to effect the sale of Dresser-Rand on, or before, December 31, 2002 frustrated "the principal purpose of the SIP." Similarly, Ingersoll-Rand, in the third count of its declaratory judgment action, alleges that its "inability to sell Dresser-Rand, prior to December 31, 2002, substantially frustrated the sole purpose of the SIP" and this "substantial frustration of the SIP's principal purpose discharged [its] obligations under the SIP."

Its seventh separate defense is that the SIP is unenforceable for lack of consideration. This correlates to the fourth count of its declaratory judgment action which asserts that because the Antoun plaintiffs were required contractually to continue to perform their usual tasks under the SIP, they provided no consideration for the grant of the SVUs.

Its eighth, and final, separate defense, that the Antoun "[p]laintiffs' claims should be dismissed for lack of subject matter jurisdiction."[1]

Ingersoll Rand, opposing Antoun plaintiffs' motion for partial summary judgment, submits a Rule 56(f) affidavit urging the Court to permit it to proceed with discovery to take depositions, under the direction of Special Master Michels.

For the reasons cited below, Antoun plaintiff's motion for partial summary judgment will be temporarily deferred to permit the taking, and completion, of depositions of witnesses to the extent necessary to meet Ingersoll Rand's Rule 56(f) objections to proceeding with the summary judgment motion.

## BACKGROUND

The parties have a long and contentious history in which accusations of stalling and

---

[1] On February 13, 2007, at oral argument on the Antoun plaintiffs' motion, Ingersoll-Rand stated that it does not intend to withdraw its eighth affirmative defense, which is that this Court lacks subject matter jurisdiction, in order to preserve it for appeal.

obstruction of the discovery process have flown back and forth. Because the history of the parties has been set forth in sufficient detail in the previous opinions of the Court, for reasons of judicial economy, only the background pertinent to the Antoun plaintiffs' motion for partial summary judgment will be recited here.

The Antoun plaintiffs' motion for partial summary judgment first addresses the issue of liability on breach of contract. They contend that, despite having a valid unilateral contract, the Antoun plaintiffs have not been paid the cash value of their SVUs, an amount in excess of $1,900,000,[2] which became due upon the sale of Dresser Rand in 2004. Further, the Antoun plaintiffs' motion seeks summary judgment on Ingersoll Rand's fourth, fifth, and sixth separate defenses, and the corresponding counts in its declaratory judgment action. In these defenses, Ingersoll Rand asserts that the SIP and the SVUs expired when it failed to sell Dresser Rand by December 31, 2002. Because the plan expired, Ingersoll-Rand contends that it owed no payments to the Antoun plaintiffs following the sale of Dresser-Rand in 2004. The Antoun plaintiffs also seek summary judgment on Ingersoll Rand's seventh separate defense, and its corollary in the declaratory judgment action, which asserts that, even if the SIP did not expire on December 31, 2002, no payment is due to the Antoun plaintiffs because they gave no consideration for the grant of SVUs.

Ingersoll Rand, opposing the Antoun plaintiffs' motion for partial summary judgment, requests that, pursuant to Fed. R. Civ. P. 56(f), it be permitted to proceed with fact depositions that were postponed by an order of the Court. Ingersoll Rand contends that these fact depositions will allow it to obtain the information it needs to defeat the Antoun plaintiffs' motion for partial summary

---

[2]Antoun plaintiffs assert that they are collectively owed over 220,000 SVUs at a cash value of approximately $90 each.

5

judgment.

The discovery process commenced in June 2005 with the initial conferences held before the Magistrate Judge. By the scheduling order dated July 26, 2005, the Magistrate set the discovery deadline as January 31, 2006 and, among other things, limited the parties to "10 depositions of fact witnesses." The order also limited objections to questions posed at the depositions to those concerning "lack of foundation, form or privilege" and prohibited "[i]nstructions not to answer . . . unless a privilege is implicated."

During the course of discovery, however, a number of complex and time consuming issues developed, which resulted in considerable delays and precluded completion of the process. "To ensure effective pre-trial supervision and management of this case and facilitate prompt resolution of pre-trial disputes," the parties agreed to have a Special Master appointed by the Court. By order dated April 11, 2006, the Honorable Herman Michels was appointed "as Special Master, with the authority equivalent to that of a Magistrate Judge." Special Master Michels, at a case management conference held on April 28, 2006, postponed depositions until paper discovery was completed.

Disputes again arose in the deposition phase of the discovery process when the Antoun plaintiffs sought to take more than the ten depositions authorized by Fed. R. Civ. P. 30(a)(2)(A). Upon the recommendation of Special Master Michels, the Court issued an order on January 4, 2007 resolving discovery applications, which denied Ingersoll Rand's application to limit the number of depositions that the Antoun plaintiffs could take but specifically noted that "counsel for the Antoun plaintiffs have stated that they are now seeking only five (5) additional depositions."

The January 4th order also addressed the issue of damages. The Antoun plaintiffs were authorized to "depose Brian Jellison, Chris Nettleton, Robert Butler, Adam Nightingale and either

6

Elizabeth Powers or a witness or witnesses to be designated by [Ingersoll Rand] on issues related to damages" but prohibited "questioning as to liability by either party." Although the question of whether the depositions of Herbert Henkel and Vincent Volpe regarding damages would be permitted was to be held in abeyance, the order allowed the Antoun plaintiffs to "move before the Special Master for permission to take additional depositions, including the depositions of Messrs Henkel and Volpe." The order restricted Ingersoll Rand to "depos[ing] no more than ten (10) witnesses limited to damage issues." The deadline to take depositions on damages was set as "ninety (90) days [from] December 29, 2006, provided, however, that should the Court grant [Ingersoll Rand's] motion for reconsideration of the Court's October 30, 2006 Opinion and Order, or deny the Antoun plaintiffs' November 21, 2006 Partial Summary Judgment Motion, the parties shall be permitted to reapply to the Special Master for a modification of this scheduling order to provide for discovery as to liability." The Court denied Ingersoll Rand's motion for reconsideration.

Ingersoll Rand now seeks to proceed with depositions, alleging that "[the Antoun plaintiffs'] obstructionist tactics have prevented the parties from moving into the deposition phase of this action [by failing] to produce long-outstanding written discovery Ingersoll Rand needs to depose these witnesses" and by failing to produce in a timely manner "responsive documents [that were] due many months ago." Ingersoll Rand argues that it "cannot present to the Court facts essential to its opposition to [the Antoun plaintiffs'] summary judgment motion because such information rests in [the Antoun plaintiffs'] sole possession."

According to its Rule 56(f) affidavit, Ingersoll Rand contends that, by deposing the Antoun plaintiffs on "the assertions contained in [the Antoun plaintiffs'] *ex parte* affidavits; their knowledge regarding Ingersoll Rand's efforts to sell Dresser-Rand in the 2000 to 2004 timeframe; and their

7

reasonable understanding of the SIP, including its expiration," it will be able to confirm that the Antoun plaintiffs "understood that Ingersoll Rand ceased efforts to sell Dresser-Rand before December 31, 2002 and that the SIP, therefore, expired on that date." According to Ingersoll Rand, this information would prove that it bears no liability to the Antoun plaintiffs for payment of the SVUs.

## DISCUSSION

Ingersoll Rand seeks permission of the Court to depose the Antoun plaintiffs to obtain the information it claims it needs to successfully oppose the Antoun plaintiffs' motion for partial summary judgment.

Rule 56(f), entitled "When Affidavits are Unavailable," provides that:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Subsection (e) of Rule 56 provides that "[t]he court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits."

According to its Rule 56(f) affidavit, Ingersoll Rand contends that only the Antoun plaintiffs possess the information Ingersoll Rand needs to defeat the Antoun plaintiffs' motion for partial summary judgment. Ingersoll Rand argues that only by deposing the Antoun plaintiffs on " the assertions contained in [the Antoun plaintiffs'] *ex parte* affidavits; their knowledge regarding Ingersoll Rand's efforts to sell Dresser-Rand in the 2000 to 2004 timeframe; and their reasonable understanding of the SIP, including its expiration," it will be able to confirm that the Antoun plaintiffs "understood that Ingersoll Rand ceased efforts to sell Dresser-Rand before December 31,

2002 and that the SIP, therefore, expired on that date." According to Ingersoll Rand, the depositions it obtains from the <u>Antoun</u> plaintiffs will prove that it bears no liability to the them for payment of the SVUs.

The Court will allow Ingersoll Rand the opportunity to proceed with depositions of the <u>Antoun</u> plaintiffs concerning the subject matter described in its Rule 56(f) affidavit. To conserve resources, Ingersoll Rand may also depose the witnesses about their damages. If the limitations presently in effect restricting depositions to ten(10) persons prevents Ingersoll Rand from obtaining the information specified in its Rule 56(f) affidavit, it may apply to the Special Master to increase that number.

## **CONCLUSION**

A decision on the <u>Antoun</u> plaintiffs' motion for partial summary judgment will be temporarily deferred.

With Special Masters Michels' continuing oversight of the process, the Court will grant Ingersoll Rand's request to proceed with depositions of witnesses on liability and damages issues to the extent noted above. The depositions will be constrained by the limitations previously set by the Special Master and orders of the Court. Further, the depositions will be limited to the areas that Ingersoll Rand claims are necessary for it to defeat the <u>Antoun</u> plaintiffs' motion for summary judgment. As it represents in its Rule 56 affidavit, these areas are limited to the assertions contained in the <u>Antoun</u> plaintiffs' *ex parte* affidavits; their knowledge regarding Ingersoll Rand's efforts to sell Dresser Rand between 2000 and 2004; and their reasonable understanding of the SIP, including its expiration. These depositions are to be taken and completed within sixty (60) days of the date of the order implementing this opinion.

Any application to extend the limitations or deadlines established for deposing witnesses concerning the factual issues, or damages, shall be brought before the Special Master for good cause only.

The Court, however, is cognizant of the two recent recommendations of Special Master Michels that arose after the instant motion was filed. One recommendation, dated February 13, 2007, was brought upon application of Ingersoll Rand for a scheduling order to compel the Antoun plaintiffs to provide more specific responses to document requests and interrogatories. The other recommendation, also dated February 13, 2007, denies Ingersoll Rand's motion to hold in abeyance all depositions pending the Court's ruling on the Antoun plaintiffs' motion for summary judgment on liability. If this opinion, and the order which follows, conflict with the provisions of the two recent recommendations of Special Master Michels, the parties are directed to bring the conflicts before him for resolution.

An appropriate order follows.

/s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.

Dated: February 21, 2007