**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| INGERSOLL-RAND COMPANY, | : | |
| | : | |
| Plaintiff, | : | CONSOLIDATED |
| | : | CIVIL ACTION NO. 05-1636(DRD) |
| v. | : | |
| | : | |
| BILL BARNETT, ALAIN MAIRE, RAMESH | : | |
| PATEL, EUGENE SEROTINI, DAVID | : | **O P I N I O N** |
| SHEMELD, ALAN THORPE, JOHN DOES | : | |
| (heretofore unidentified individuals), | : | |
| | : | |
| Defendants, | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | |
| | : | |
| SAMMY D. ANTOUN, BILL BARNETT, | : | |
| LARRY BETCHE, DALE W. BEEBEE, BARRY | : | |
| E. COTTRELL, ROBERT COUGHLIN, KEN | : | |
| FAHRBACH, JAMES D. FOLEY, BRIAN | : | |
| GALLAGHER, JOHN A. GEGUS, DAVE IOCCO, | : | |
| DAVID LAMOREAUX, ED KNOEPFLE, | : | |
| RAMESH PATEL, GARY F. PETERSON, | : | |
| DANTE E. RAMELLA, LAWRENCE RICHARDS, | : | |
| EDI BIOLCATI RINALDI, HANS RODBERG, | : | |
| MICHEL RABUTEAU, EUGENE SEROTINI, | : | |
| DAVID SHEMELD, JOHN SNYDER, ALAN | : | |
| THORPE, CHRISTOPHER J. TRIFFITT, JOHN | : | |
| DOES 1-20, and RICHARD ROES 1-20, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| INGERSOLL-RAND COMPANY, a New Jersey | : | |
| Corporation, | : | |
| | : | |
| Defendant. | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | |

Appearances by:

Anthony Bartell, Esq.
Jerry P. Sattin, Esq.
Barbara Levy, Esq.
Carey Francis, Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4056

  Attorneys for Ingersoll-Rand Company

James H. Forte, Esq.
SAIBER SCHLESINGER SATZ & GOLDSTEIN, LLC
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5311

  Attorney for Declaratory Judgment Defendants and Antoun Plaintiffs

Scott Steiner, Esq.
Kevin Kostyn, Esq.
STEINER & KOSTYN, LLP
2 William Street, Suite 302
White Plains, New York 10601

  Of Counsel for Declaratory Judgment Defendants and Antoun Plaintiffs

**Debevoise, United States Senior District Judge**

  These two consolidated actions now before the court arise out of Ingersoll-Rand

Company's ("Ingersoll-Rand") efforts in 2000 to sell its affiliate, Dresser-Rand Company

("Dresser-Rand"), in furtherance of which Ingersoll-Rand issued to key employees, pursuant to a

Sales Incentive Plan ("SIP"), Sales Value Units ("SUVs").  The SIP provided for payments on

account of the SUVs when Ingersoll-Rand sold Dresser-Rand.

  Ingersoll-Rand sold Dresser-Rand in October 2004.  Rejecting certain employees'

demands for payment, Ingersoll-Rand asserted that no payments were owing on account of the

SUVs, because the SIP had expired on December 31, 2002, when Ingersoll-Rand had ceased

2

efforts to sell Dresser-Rand.

## I.  Procedural Background

On February 10, 2005, Ingersoll-Rand filed a complaint in the New Jersey Superior Court against several former Dresser-Rand employees seeking a judgment that it bears no obligation to these former employees under the SIP.  See Ingersoll-Rand Company v. Bill Barnett, et al., Docket No. L-1075-05 ("Ingersoll-Rand Action").  Subsequently, Ingersoll-Rand added additional former employee defendants.  Defendants then removed the Ingersoll-Rand Action to this Court.

On June 1, 2005, one current Dresser-Rand employee and several former Dresser-Rand employees, including five defendants in the Ingersoll-Rand Action, filed an action against Ingersoll-Rand in this Court, seeking payment under the SIP for the 2004 sale of Dresser-Rand. See Sammy D. Antoun, et al. v. Ingersoll-Rand Co., Civil Action No. 05-2834 (HAA) ("Antoun Action").  The complaint was amended from time to time to add additional former Dresser-Rand employees as plaintiffs.  The Ingersoll-Rand Action and the Antoun Action have been consolidated.

Ingersoll-Rand moved for partial summary judgment dismissing the claims of nine former Dresser-Rand employees who executed severance agreements that contained broad release language ("Antoun plaintiffs").

In response, the Antoun Plaintiffs moved for partial summary judgment to strike the Second and Third Separate Defenses of Ingersoll-Rand and to declare that the releases in the severance agreements of Antoun Plaintiffs Sammy Antoun, Dale Beebee, Barry Cottrell, Ken Fahrbach, Brian Gallagher, John Gegus, Dave Iocco, Gary Peterson and John Snyder do not bar

3

the claims asserted in the <u>Antoun</u> Complaint.  The Second Separate Defense states that "[p]laintiffs' claims are barred by the releases signed by plaintiffs upon termination of their employment with Dresser-Rand . . . ."  The third Separate Defense provides that "[p]laintiffs' claims are barred by the doctrine of accord and satisfaction."

Ingersoll-Rand moved for partial summary judgment to dismiss the claims of certain <u>Antoun</u> Plaintiffs, the nine former Dresser-Rand employees who executed severance agreements to effect their retirements.  Ingersoll-Rand contended, in the first instance, that there was no plan in effect when the <u>Antoun</u> Plaintiffs retired because, when the sale of Dresser-Rand did not occur as anticipated, the SIP expired on December 31, 2002.

In the alternative, Ingersoll-Rand contended that, even if there were a plan in effect beyond December 31, 2002, by signing the broad releases contained in their severance agreements and in consideration of "extremely generous severance packages," the <u>Antoun</u> plaintiffs released Ingersoll-Rand from any obligation to pay under the SIP, while other claimants negotiated severance agreements, which specifically included reference to the SIP.  Ingersoll-Rand argued that, although the severance agreements of the <u>Antoun</u> plaintiffs may vary slightly based upon whether the agreement was prepared by Ingersoll-Rand or by Dresser-Rand, all the agreements released Ingersoll-Rand, Dresser-Rand, its parents, affiliates and subsidiaries from

> . . . any and all charges, complaints, claims, and liabilities of any kind suspected or unsuspected . . . which you at any time heretofore had or claimed to have or which you may have or claim to have regarding events that have occurred as of the date of this Agreement . . . .
>
> The parties understand the word "claims" to include all actions, claims and grievances, whether actual or potential, known or unknown, and specifically but not exclusively all claims arising out

of your employment with the Company and termination.  All such
claims (including related attorney's fees and costs) are forever
barred . . . .

Opposing Ingersoll-Rand's motion for summary judgment, the <u>Antoun</u> plaintiffs
contended that they were not aware that the SIP was defunct as of December 31, 2002, and
Ingersoll-Rand never notified them that this was the case until August 26, 2004, the day after
Dresser-Rand was sold.  Only then were they informed that they would not be paid for their
SVUs.  Pointing to the "Effective Date" language of the 2000 SIP, which states that the plan is in
effect until Dresser-Rand is sold, the <u>Antoun</u> Plaintiffs claimed that their SVUs became due and
payable within ninety (90) days after the sale closed on October 29, 2004.  The <u>Antoun</u> Plaintiffs
contended that they gave up their grants from the stock appreciation right program and stock
option program in exchange for the SVUs that were awarded in January 2001 for the years 2001,
2002, and 2003.

In addition, the <u>Antoun</u> Plaintiffs sought partial summary judgment to strike Ingersoll-
Rand's Second[1] and Third[2] Separate Defenses because (1) Ingersoll-Rand awarded each of the
<u>Antoun</u> plaintiffs SVUs under the SIP; (2) the releases did not apply to this action because this
action had not accrued as of the Effective Date of their severance agreements; and, (3) because
Dresser-Rand was yet to be sold, there were no claims to release as of the Effective Date of their
severance agreements.

Ruling on these motions, the Court held in an October 26, 2006, opinion (the "October

---

[1]  "Plaintiffs' claims are barred by the releases signed by the plaintiffs upon the
termination of their employment with Dresser-Rand . . . ."

[2]  "Plaintiffs' claims are barred by the doctrine of accord and satisfaction."

2006 Opinion"): (i) the unambiguous language of the SIP provides that "[t]he Plan is effective September 1 2000 (sic), and will remain in effect until Dresser-Rand is sold," and consequently the SIP was in effect when Dresser-Rand was sold in August 2004; (ii) there was no evidence to support a finding that either the <u>Antoun</u> Plaintiffs or the company representatives who negotiated the severance agreements intended the releases to cover payment of the SUVs under the SIP.

The court's order provided that: (i) Ingersoll-Rand's motion for partial summary judgment dismissing the <u>Antoun</u> Plaintiffs' complaint was denied; and (ii) the <u>Antoun</u> Plaintiffs' motion for partial summary judgment, dismissing Ingersoll-Rand's Second Affirmative Defense (release) and Third Affirmative Defenses (accord and satisfaction) of Ingersoll-Rand's Answer was granted.

On November 17, 2006, the <u>Antoun</u> Plaintiffs moved pursuant to Rule 56(a) of the Federal Rules of Civil Procedure for an order granting summary judgment as to liability on the First Count of the Second Amended Complaint for breach of contract in the <u>Antoun</u> Action, and striking the First and Fourth through Eighth Separate Defenses in the Answer of Ingersoll-Rand, and granting summary judgment dismissing the <u>Ingersoll-Rand</u> declaratory judgment action.[3]

---

[3]  Ingersoll-Rand's first separate defense is that the <u>Antoun</u> "[p]laintiffs fail to assert a cause of action against Ingersoll-Rand."

Its fourth separate defense is that the <u>Antoun</u> "[p]laintiffs' claims are barred by virtue of the expiration of the SIP prior to the 2004 sale of Dresser-Rand."  This defense corresponds to the first count of the declaratory judgment action, which asserts that the SVUs and the SIP expired on December 31, 2002 when Ingersoll-Rand failed to sell Dresser-Rand.

Its fifth separate defense is that Ingersoll Rand's failure to sell Dresser-Rand on or before December 31, 2002 constituted the failure of a condition precedent to the payment of the SVUs to the <u>Antoun</u> Plaintiffs.  This defense corresponds to the second count of its declaratory judgment action, which alleges that the sale of Dresser-Rand "prior to December 31, 2002, constituted a condition precedent to payment under the SIP" and that because it "did not sell

Each party submitted voluminous materials derived from discovery in support of or in opposition to the motion.

Despite the extensive discovery that preceded the <u>Antoun</u> Plaintiffs' motion for partial summary judgment, Ingersoll-Rand opposed the motion in part on Rule 56(f) grounds, seeking to take additional fact depositions, arguing that it "cannot present to the Court facts essential to its opposition to the <u>Antoun</u> plaintiffs' summary judgment motion because such information rests in [the <u>Antoun</u> Plaintiffs'] sole possession."

According to its Rule 56(f) affidavit, Ingersoll-Rand contended that, by deposing the <u>Antoun</u> Plaintiffs on "the assertions contained in [the <u>Antoun</u> Plaintiffs'] <u>ex parte</u> affidavits; their knowledge regarding Ingersoll-Rand's efforts to sell Dresser-Rand in the 2000 to 2004 time frame; and their reasonable understanding of the SIP, including its expiration, "it will be able to confirm that the <u>Antoun</u> Plaintiffs "understood that Ingersoll-Rand ceased efforts to sell Dresser-Rand before December 31, 2002 and that the SIP, therefore expired on that date."

—————————————————

Dresser-Rand prior to December 31, 2002 [it] need make no payment under the SIP."

Its sixth separate defense is that Ingersoll Rand's failure to effect the sale of Dresser-Rand on, or before, December 31, 2002 frustrated "the principal purpose of the SIP." Similarly, Ingersoll-Rand, in the third count of its declaratory judgment action, alleges that its "inability to sell Dresser-Rand, prior to December 31, 2002, substantially frustrated the sole purpose of the SIP" and this "substantial frustration of the SIP's principal purpose discharged [its] obligations under the SIP."

Its seventh separate defense is that the SIP is unenforceable for lack of consideration. This correlates to the fourth count of its declaratory judgment action which asserts that because the <u>Antoun</u> plaintiffs were required contractually to continue to perform their usual tasks under the SIP, they provided no consideration for the grant of the SVUs.

Its eighth, and final separate defense, is that the <u>Antoun</u> "[p]laintiffs' claims should be dismissed for lack of subject matter jurisdiction."

Responding to Ingersoll-Rand's contention, the Court temporarily deferred a decision on the <u>Antoun</u> Plaintiffs' motion for summary judgment and permitted Ingersoll-Rand to proceed with depositions under the continuing management of Special Master Herman D. Michels.  The depositions were taken and the parties thereafter submitted voluminous additional papers and supplemental briefs.  A hearing on the motion was held on September 11, 2007.

## II.  <u>Background</u>

Before February, 2000, Dresser-Rand was a joint venture owned forty-nine percent (49%) by Ingersoll-Rand and fifty-one percent (51%) by Dresser Inc.  In August, 1999, Ingersoll-Rand announced that it intended to sell its 49% interest to Dresser Inc.  Consistent with its rights under the joint venture agreement, Dresser Inc., elected not to purchase Ingersoll-Rand's interest, but, instead, to sell its 51% interest to Ingersoll-Rand.  In February 2000, Ingersoll-Rand purchased Dresser Inc.'s 51% interest for approximately $543 million, at which time Dresser-Rand became a wholly-owned subsidiary of Ingersoll-Rand.

Thereafter, Ingersoll-Rand desired to divest itself of its interest in Dresser-Rand.  To further this purpose and to achieve a desirable sale price for Dresser-Rand, Ingersoll-Rand adopted the SIP.  It sent a copy of the plan and a cover letter to the key employees who were selected to participate in the program.  Each of the nine plaintiffs received a notice, dated January 23, 2001, and marked "confidential," from B.D. Jellison announcing the "Dresser-Rand Sale Incentive Program."  By way of example, the letter to Mr. Antoun read:

> Congratulations on helping build the second half of 2000 into a strong foundation for the future of Dresser-Rand.  The continued turnaround of the business and the execution of focused initiatives in developing new opportunities will make the business more attractive to a buyer.  This in turn means a brighter and more

secure future for our associates.

We have developed an incentive plan for you, which is designed to reward your contribution towards improving Dresser-Rand's earnings now and in years to come. The plan rewards you for your efforts in achieving the best sales price for the Dresser-Rand Company.

I am pleased to present you with 50,000 Dresser-Rand Sale Value Units (SVU). These Sale Value Units will be converted into cash and a lump sum paid to you within 90 days of the date of sale of Dresser-Rand Company. The value of an SVU is directly related to the sale price of Dresser-Rand Company. The higher the sale price the higher the value of your SVU. A copy of the plan summary is enclosed.

Key provisions of the two-page SIP read as follows:

## INGERSOLL-RAND COMPANY
## DRESSER-RAND SALE INCENTIVE PLAN

### PURPOSE

The Plan is structured to reward key employees for their contributions toward maximizing EBITDA (Earnings Before Interest Tax, Depreciation and Amortization) and consequently, a desirable sale price for Dresser-Rand Company. This will be achieved by granting Sale Value Units (SVUs) to key employees. The majority of SVUs will be granted to current employees before the end of December 2000. This plan is in lieu of any grant from a Stock Appreciation Right (SAR) Plan and/or Stock Option program for the years 2001, 2002 and 2003. (This program does not affect the SAR/Stock Option replacement program for grants 1998, 1999 and 2000).

### EFFECTIVE DATE

The Plan is effective September 1, 2000 and will remain in effect until Dresser-Rand Company is sold.

### PARTICIPATION

Eligibility for participation under this plan and actual SVU grants

9

is restricted to those designated by Ingersoll-Rand Company (IR)
Management.

INCENTIVE OPPORTUNITY

Eligible participants will be granted a number of Dresser-Rand
Sale Value units (SVUs).  The value of one Sale Value Unit is
directly related to the sale price of Dresser-Rand Company.

A grant will be made in January 2001 for the years 2001, 2002 and
2003.

PAYMENTS

Any award under this plan will be paid no later than 90 days
following the closing date of the sale of Dresser-Rand Company.

TERMINATION

An employee who voluntarily terminates or is involuntarily
terminated by the Company for any reason before the closing date
of the sale, with the sole exceptions of death, disability, or
retirement shall not receive or be entitled to any award from this
plan.  For those employees who leave the Company for the reason
of death, disability or retirement will receive a pro-rated award
based on the time they were actively employed during the period
from the effective date of this plan to December 31, 2002.  Any
payment due will be made within 90 days from December 31,
2002.

GENERAL PROVISIONS

The Ingersoll-Rand Compensation and Nominating Committee
will be the final arbiter regarding interpretation of this Plan.

Dresser-Rand was not sold by December 31, 2002.  Prior to October, 2004, each of the

Antoun Plaintiffs retired from Ingersoll-Rand or Dresser-Rand and signed severance agreements

that are described in detail in the October 26, 2006 Opinion.  Also described in that Opinion are

2003 or 2004 written communications to and from Antoun Plaintiffs and Ingersoll-Rand or

Dresser-Rand officers concerning the SUVs.

When Dresser-Rand was not sold by December 31, 2002, Ingersoll-Rand abandoned its efforts to sell Dresser-Rand for a time and then initiated a new effort to sell in 2004. In connection with its new sale efforts, Ingersoll-Rand devised a new sale reward plan (the "2004 Plan"). On October 31, 2004, Ingersoll-Rand sold Dresser-Rand.

The Antoun Plaintiffs asserted that as a result of the sale, they are entitled to payment of their SVUs under the SIP. Ingersoll-Rand denies that they are entitled to such payments because the SIP terminated on December 31, 2002 and, further, the nine Antoun plaintiffs released their rights under the SIP in their individual severance agreements, issues that were decided adversely to Ingersoll-Rand in the October 26, 2006 Opinion.

Plaintiffs in the Antoun action and Defendants in the Ingersoll-Rand declaratory judgment action (the "Antoun Plaintiffs") move, pursuant to Federal Rule of Civil Procedure 56(a), for partial summary judgment as to the liability of Ingersoll-Rand on the First Count of the Second Amended Complaint (contract). The Antoun plaintiffs move to strike the fourth, fifth, sixth and seventh separate defenses of Ingersoll-Rand as asserted in its Answer to the Antoun Plaintiffs' Second Amended Complaint and to strike the counts of Ingersoll-Rand's declaratory judgment motion, which correspond to those defenses.

Ingersoll-Rand's fourth separate defense is that the Antoun Plaintiffs' claims are barred because the SIP expired prior to the 2004 sale of Dresser-Rand. This defense corresponds to Ingersoll-Rand's declaratory judgment Count One, termination of the SIP, which states that the SUVs issued under the SIP expired when Dresser-Rand was not sold by December 31, 2002.

Ingersoll-Rand's fifth separate defense is that the Antoun Plaintiffs' claims are barred

because the sale of Dresser-Rand prior to December 31, 2002 was a condition precedent to payment of the SVUs under the SIP.  This defense corresponds to Ingersoll-Rand's declaratory judgment Count Two, failure of condition precedent, which states that Ingersoll-Rand need not make any payment of SVUs under the SIP because Dresser-Rand was not sold prior to December 31, 2002.

Ingersoll-Rand's sixth separate defense is that the Antoun Plaintiffs' claims are barred because the principal purpose of the SIP was frustrated when Ingersoll-Rand failed to sell Dresser-Rand by December 31, 2002.  This defense corresponds to Ingersoll-Rand's declaratory judgment Count Three, frustration of purpose, which states that, because Ingersoll-Rand did not assume any risk by its inability to sell Dresser-Rand, the frustration of its principal purpose, to sell Dresser-Rand by December 31, 2002, discharged Ingersoll-Rand of any obligations under the SIP.

Ingersoll-Rand's seventh separate defense is that the Antoun Plaintiffs' claims are barred because the SIP is unenforceable for lack of consideration.  This defense corresponds to Ingersoll-Rand's declaratory judgment Count Four, lack of consideration, which states that the SIP is unenforceable for lack of consideration because the Antoun plaintiffs continued to perform their usual tasks, providing no consideration for the grant of SVUs.

For the reasons set forth below, the Antoun Plaintiffs' motion for summary judgment as to breach of contract and liability will be granted and Ingersoll-Rand's fourth, fifth, sixth and seventh affirmative defenses will be dismissed.

### III. **Summary Judgment Standard**

Summary judgment will be granted if the record establishes that "there is no genuine

12

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) imposes a burden on the moving party simply to point out to the district court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has met this burden, the burden then shifts to the non-moving party. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsusita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, the non-moving party may not simply "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Rather, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The facts asserted by the party opposing the motion, however, if supported by affidavits or other evidentiary material, must be regarded as true. Janek v. Celebrezze, 336 F.2d 828 (3d Cir. 1964).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id. at 247. In determining whether there exists a material issue of disputed fact, however, the facts and the inferences to be drawn from the facts are to be viewed in the light most favorable to the non-moving party. Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

**IV.  Discussion**

13

The court decided the critical issues of the meaning of the SIP in its October 26, 2006 Opinion. It decided these issues as a matter of law, and the sole question now is whether any evidence that Ingersoll-Rand developed during the most recent discovery period creates an issue of material fact.

A. The October 2006 Opinion: First, it will be useful to set forth the findings and conclusions in this regard that were contained in the October, 2006 Opinion. As previously noted, the SIP provides: "EFFECTIVE DATE The Plan is effective September 1, 2000 and will remain in effect until Dresser-Rand Company is sold."

Whether terms of a plan document are ambiguous is a question of law. A term is "ambiguous if it is subject to reasonable alternative interpretations." Taylor v. Cont'l Group Change in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir. 1991); accord Mellon Bank, N.A. v. Aetna Bus. Credit Inc., 619 F.2d 1001, 1011 (3d Cir. 1980). In determining whether a particular clause in a plan document is ambiguous, courts must first look to the plain language of the document because "[t]he written terms of the plan documents control . . . ." In re Unisys Corp. Retiree Med. Ben. ERISA Litig., 58 F.3d 896, 902 (3d Cir. 1995). If the plain language of the document is clear, courts must not look to other evidence. In re Unisys Corp. Long-Term Disability Plan ERISA Litig., 97 F.3d 710, 715 (3d Cir. 1996). Where the plain language leads to two reasonable interpretations, courts may look to extrinsic evidence to resolve ambiguities in the plan document, but "it is inappropriate to [do so] when no ambiguity exists." Epright v. Envtl. Res. Mgmt., Inc. Health and Welfare Plan, 81 F.3d 335, 339 (3d Cir. 1996). Also, "[w]hen interpreting contracts, [courts] are required to read contract language in a way that allows all the language to be read together, reconciling conflicts in the language without

14

rendering any of it nugatory if possible." <u>CTF Hotel Holdings, Inc. v. Marriot Int'l, Inc.</u>, 381

F.3d 131, 137 (3d Cir. 2004) (citation omitted).

      The Court found that Ingersoll-Rand's reliance on the inclusion of the December 31,

2002, date in the section entitled "Termination" was misplaced, holding that the section refers

not to the termination of the SIP, but to the termination of employment of an employee covered

by the SIP.  The section describes "[a]n employee who voluntarily terminates or is involuntary

terminated . . . before the closing date of the sale . . . shall not receive or be entitled to any award

. . . ."  It then carves out exceptions for "employees who leave the Company for the reason of

death, disability or retirement [to] receive a pro-rated award based on the time they were actively

employed . . . from the effective date of this plan to December 31, 2002," specifying that "[a]ny

payment due will be made within 90 days from December 31, 2002."  The mere inclusion of the

provision that payment "will be made within 90 days of December 31, 2002" did not constitute a

repeal of the expiration date or provide that the SIP would expire on December 31, 2002.

      On the other hand, the plain language of the SIP is clear that the plan was in effect until

Dresser-Rand was sold.  The sentence includes no qualifications that would lead a reasonable

reader to believe that the plan would terminate or expire at any time prior to the date upon which

Dresser-Rand was sold.

      The payments section also clearly states that "[a]ny award under this plan will be paid no

later than 90 days following the closing date of the sale of Dresser-Rand Company."  Like the

effective date language, the payment is conditioned only on the closing sale date.  There is no

qualifying language that restricts the plan payments to sale of the company on or before

December 31, 2002.

15

Other sections of the SIP also support the reading that the plan was in effect until Dresser-Rand was sold.  "This plan is in lieu of any grant . . . for the years 2001, 2002, 2003" and "[a] grant will be made in January 2001 for the years 2001, 2002 and 2003" (emphasis added). Clearly, the plan provides that SVUs will be issued for calendar year 2003 to reward key employees for their efforts in maximizing a desirable sale price.  Had the plan expired in December 2002, as Ingersoll-Rand asserts, there would be no need to issue awards to employees for calendar year 2003.

As of the date of the October 2006 Opinion, Ingersoll-Rand had not provided credible evidence that it notified the affected employees in advance that the SIP was withdrawn, modified, or terminated.  In fact, the 2003 e-mails to some of the Antoun plaintiffs from high level corporate officers, such as Dresser-Rand president Vince Volpe, stating that SVUs will not be paid unless and until Dresser-Rand is sold were persuasive extrinsic evidence that the plan was viable beyond 2002.  These corporate officers, through these e-mail exchanges, had numerous opportunities to advise Antoun and others that the plan no longer existed, but they did not do so. Instead, the e-mails repeatedly reinforced the concept that no payment of the SVUs would be made unless Dresser-Rand was sold.

Also persuasive was the fact that the severance agreements of other employees, contemporaneous with those signed by the Antoun Plaintiffs, contained language concerning the disposition of their SVUs.  In addition, the 2004 sale incentive program contained no language stating that it would replace or extinguish the 2000 sale incentive program.  Therefore, Ingersoll-Rand's contention that the Antoun Plaintiffs knew that the 2000 plan had expired because the company launched the 2004 plan was found to be baseless.

16

Therefore, the Court was persuaded not only by the unambiguous language of the SIP, but also by extrinsic evidence that the SIP was in full force and effect until the sale of Dresser-Rand.

B. "New Evidence" Upon Which Ingersoll-Rand Relies:  Ingersoll-Rand took extensive depositions of the Antoun Plaintiffs and submitted, in further opposition to the Antoun Plaintiffs' motion for partial summary judgment, numerous portions of deposition transcripts and additional documents, which, it contends, establish that the SIP terminated on some date prior to the sale of Dresser-Rand, or at least create an issue of fact.

1. Alternative Termination Dates: Ingersoll-Rand contends now, as it has from the beginning, that, the language of the SIP was clear and unequivocal: the SIP, by its own terms, expired by December 31, 2002.  Pointing to the lines in the SIP document, which read that "those employees who leave the Company for the reason of death, disability or retirement will receive a pro-rated award based on the time they were actively employed during the period from the effective date of this plan to December 31, 2002," and that "[a]ny payment due will be made within 90 days from December 31, 2002," Ingersoll-Rand argues that this language expressly conditioned payment of SVUs upon the sale of Dresser-Rand by December 31, 2002 because "any payment due" had to be paid "within 90 days from December 31, 2002."  This language, according to Ingersoll-Rand, was intended to provide, and did provide, a *de facto* expiration of the SIP, which cannot be explained away by the Antoun plaintiffs.

Analogizing the SIP to other bonus schemes paid by Ingersoll-Rand/Dresser-Rand, in which payment of bonus monies was pro-rated to the months of service during the bonus eligibility period, Ingersoll-Rand again asserts that the Antoun plaintiffs knew, or should have known, that December 31, 2002 was the end of the plan because the SIP language pro-rated the

payment of SVUs through December 31, 2002.  Ingersoll-Rand urges the Court to find that the SIP expired on December 31, 2002, by imputing the date in the TERMINATION section of the SIP to the EFFECTIVE DATE section of the SIP, yielding a reading of "a pro-rated award based on the time they were actively employed during the period from September 1, 2000 until Dresser-Rand Company is sold to December 31, 2002."  The Court has already rejected this reasoning, and nothing has been added to change this conclusion.

Further, Ingersoll-Rand asserts that the Antoun plaintiffs knew that the SIP expired on December 31, 2002, because Ingersoll-Rand had ceased its efforts to sell Dresser-Rand by December 31, 2002, and this fact was well-publicized inside, as well as outside of, the company. In support of this contention, Ingersoll-Rand offers a number of newspaper and magazine articles concerning the sale of Dresser-Rand, which reported that after a year of being on the sale block, Ingersoll-Rand decided that it would retain Dresser-Rand because there were no suitors and it would not be sold in 2002.  Statements made by the Antoun plaintiffs that Ingersoll-Rand never ceased its efforts to sell Dresser-Rand were dismissed by Ingersoll-Rand as merely "scuttlebutt." (Bartell Br. p. 38).

Ingersoll-Rand also offers the certification of John Turpin ("Turpin"), who states that he specifically advised the Antoun plaintiffs at the end of calendar year 2002 that Dresser-Rand had been taken off the market and was to be re-integrated as part of his group, the Industrial Solutions sector.  (Turpin Cert. July 7, 2007).  Turpin also advised the holders of special severance agreements that those agreements would be allowed to expire on December 31, 2002, because Ingersoll-Rand had ceased active efforts to sell Dresser-Rand.  Further evidence of Dresser-Rand's integration, according to Ingersoll-Rand, is an August 9, 2002 web-posting entitled "D-R

Integrating With IR," which, in part, stated that:

> Several months ago, it was announced that [Dresser-Rand] would
> join Ingersoll-Rand's Industrial Solutions Sector (ISS) while
> continuing to be 'for sale,' if a suitable buyer could be found.
> Currently, there is no activity in this area so IR has decided to
> begin integrating us into their normal business processes.

Baron Cert. July 9, 2007 at ¶3, Exh. A.

The integration efforts referred to included changes in Dresser-Rand's internal systems
and platforms, such as health, welfare and retirement plans, payroll, and salaries, to bring them in
line with those of Ingersoll-Rand.

For the purposes of the motion, the Antoun Plaintiffs accept as true that at a time prior to
December 31, 2002, Ingersoll-Rand ceased actively trying to sell Dresser-Rand.  They contend,
as is in fact the case, that there is nothing in the SIP that provides that it expires if Ingersoll-Rand
for a time terminates its efforts to sell Dresser-Rand.  In fact there is in the extrinsic evidence a
strong indication that termination of the sales efforts did not affect the continuation of the SIP.
Ingersoll-Rand submitted an earlier draft of the "Effective Date" section of the plan that provided
that the SIP expired "when Ingersoll-Rand decided that the sale process ended."  (Francis Dec.
29, 2006 Cert. at Exh. B).  That language did not appear in the final SIP.

When Ingersoll-Rand introduced the Plan, Mr. Nightingale drafted a short PowerPoint
presentation to assist Dresser-Rand managers in explaining the program to participants.  There
appeared the following statement in the PowerPoint presentation: "The Plan is effective 9/1/00
and will remain in effect until D-R is sold or I-R decides the sale process is ended."  (emphasis
added).

For multiple reasons the PowerPoint version does not supersede the plain language of the

SIP.  The SIP provides that the Plan "will remain in effect until Dresser-Rand Company is sold."

One of the slides of the PowerPoint differs from the unambiguous language, adding, "or I-R

decides the sale process was ended."  Further, the language of the PowerPoint, which was drafted

well before the final language of the SIP, differs in significant other respects from the final

version of the Plan.  Mr. Nightingale prepared the PowerPoint in October, 2000, nearly four

months before the final version of the Plan was drafted and issued.  There were several

significant changes between October, 2000 and December, 2000 or January, 2001, by which time

the language "or I-R decides the sales process ended" was removed from the "EFFECTIVE

DATE" provision in the final version of the Plan.  Consequently, extrinsic evidence of earlier

versions of the SIP and of the PowerPoint presentation provide further support for the <u>Antoun</u>

Plaintiffs' reliance upon the unambiguous language of the Expiration provision.

       As another alternative, Ingersoll-Rand argues that, even if the court finds that the SIP did

not terminate, or was not terminated, by the end of 2002 or 2003, Ingersoll-Rand terminated the

SIP in August 2004, two months prior to the sale of Dresser-Rand in 2004.  Ingersoll-Rand

asserts that, after receiving an inquiry from a potential suitor, about August 26, 2004, it's CEO

and president, Herb Henckle, sent a letter advising that Ingersoll-Rand had commenced a new

sales campaign and published a new reward plan (the "2004 Plan") that applied only to

employees active at the time of Dresser-Rand's sale.  Henckle's August 26, 2004 letter also

advised, in part, that:

> As a result of our inability to complete a satisfactory transaction in
> 2002, Ingersoll-Rand had ceased the process of attempting to sell
> Dresser-Rand.  In addition, the sales value units awarded for years
> 2001, 2002 and 2003 have expired, as have all rights under that
> plan.

(Butler Cert. Jul. 6, 2007 at ¶ 17 and Exh. B.).

This letter, according to Ingersoll-Rand, provided the Antoun plaintiffs with actual notice that the SVUs issued in 2001, 2002 and 2003 and all rights under the SIP had expired.  Ingersoll-Rand does not explain how its CEO and president had the authority to unilaterally terminate the SIP in face of the expiration provision.

2. Ingersoll-Rand's Other Arguments: Ingersoll-Rand advances a number of subsidiary arguments to support its contention that its sale of Dresser-Rand was not governed by the SIP.

The SIP provides that "[t]he Ingersoll-Rand Compensation and Nominating Committee will be the final arbiter regarding interpretation of this Plan."  Based on this paragraph, Ingersoll-Rand argues that Ingersoll-Rand retained the right to terminate the Plan at will, and that certain Antoun Plaintiffs conceded as much on their depositions.  Whatever particular Plaintiffs may have believed in 2006 when their depositions were taken does not affect the meaning of unambiguous language drafted in 2002.  Under no stretch of language can the power of "interpretation of this Plan" be transformed to mean the power of "termination of the Plan."

Ingersoll-Rand's contention that Dresser-Rand's sale by December 31, 2002, was a condition precedent to payment under the SIP is nowhere supported in the language of the SIP, and is nothing more than a reworking of its December 31, 2002, expiration argument.  Similarly, Intersoll-Rand's frustration of purpose contention has no support in the record.  It sought to sell Dresser-Rand; its initial efforts in 2001 and 2002 were unsuccessful; it succeeded in 2004 when its purpose was accomplished.

Regardless of the expiration date of the SIP, Ingersoll-Rand argues that, by virtue of their

21

severance agreements, the <u>Antoun</u> Plaintiffs were required to continue to perform, and did continue to perform, their customary jobs for Dresser-Rand.  Thus, they provided no valuable consideration for their SVU grants, and because the <u>Antoun</u> plaintiffs provided no valuable consideration, the SVUs were merely a gratuity.  It is apparent that Ingersoll-Rand's issuance of the SIP constituted an offer that ripened into a unilateral contract by the participants' continued work for the company.  <u>See</u> <u>Nolan v. Control Data Corp.</u>, 243 N.J. Super. 420, 430 (App. Div. 1990) (continued employment "constituted sufficient consideration to entitle him [the employee] to any benefits that the plans described").  The severance agreements that certain of the <u>Antoun</u> Plaintiffs entered into did not change the situation.  They remained subject to termination, i.e., as at will employees, but agreed to remain on.

Confronted with clear and unambiguous contract language governing the expiration of the SIP, Ingersoll-Rand has produced a mountain of evidence.  This extrinsic evidence has done nothing to detract from the SIP's unambiguous meaning; rather it confirms it.  Consequently the <u>Antoun</u> Plaintiffs' motion for summary judgment will be granted.

## IV.  <u>Conclusion</u>

The court will file an order entering summary judgment as to liability in favor of the <u>Antoun</u> Plaintiffs and against Ingersoll-Rand on the First Count of the Second Amended Complaint for breach of contract in the <u>Antoun</u> Action and striking the First and Fourth through Eighth Separate Defenses of the Answer of Defendant Ingersoll-Rand, and granting summary judgment dismissing the Ingersoll-Rand declaratory judgment action.

Dated:  September 26, 2007               **  /s/ Dickinson R. Debevoise  **
                                         DICKINSON R. DEBEVOISE
                                         U.S.S.D.J.